# LINCOLN COUNTY *v.* LUNING.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEVADA.

No. 1274. Submitted January 13, 1890. — Decided March 3, 1890.

The Eleventh Amendment to the Constitution does not operate to prevent counties in a State from being sued in a Federal Court.

No state statute exempting a county in the State from liability to suit except in the courts of the county can defeat the jurisdiction of suits given by the Constitution to the Federal courts.

This court follows the Supreme Court of Nevada in holding that the statute under which the bonds in controversy were issued was not in conflict with the Constitution of of that State.

*County of Greene* v. *Daniel*, 102 U. S. 187, followed.

When, after default by a municipal corporation in the payment of interest upon its bonds the legislature provides for the creation of a special fund by the debtor, out of which the creditor is to be paid, the debtor cannot set up the statute of limitations to an action on the bonds and coupons, without showing that the fund has been provided.

The case is stated in the opinion.

*Mr. H. F. Bartine* for plaintiff in error.

*Mr. Abraham Clark Freeman* for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

This is an action on bonds and coupons. Judgment was rendered against the county and it alleges error. The pri-

mary question is as to the jurisdiction of the Circuit Court. This jurisdiction is challenged on two grounds. First, it is claimed that because the county is an integral part of the State it could not, under the Eleventh Amendment of the. Federal Constitution be sued in the Circuit Court; and, secondly, inasmuch as the act under which the bonds were issued provided for litigation concerning the same, and named a court of the State in which such litigation could be had, that such jurisdiction was exclusive and prevented suit in the Circuit Court.

With regard to the first objection, it may be observed that the records of this court for the last thirty years are full of suits against counties, and it would seem as though by general consent the jurisdiction of the Federal courts in such suits had become established. But irrespective of this general acquiescence, the jurisdiction of the Circuit courts is beyond question. The Eleventh Amendment limits the jurisdiction only as to suits against a State. It was said by Chief Justice Marshall, in *Osborn* v. *The Bank of the United States*, 9 Wheat. 738, 857, that "the Eleventh Amendment, which restrains the jurisdiction granted by the Constitution over suits against States, is of necessity limited to those suits in which the State is a party on the record."

While that statement was held by this court in the case of *In re Ayers*, 123 U. S. 443, to be too narrow, yet by that decision the jurisdiction was limited only in respect to those cases in which the State is a real, if not a nominal defendant; and while the county is territorially a part of the State, yet politically it is also a corporation created by and with such powers as are given to it by the State. In this respect it is a part of the State only in that remote sense in which any city, town, or other municipal corporation may be said to be a part of the State. *Metropolitan Railroad Co.* v. *District of Columbia*, 132 U. S. 1.

The constitution of the State of Nevada explicitly provides for the liability of counties to suit. Article eight is entitled "Municipal and other corporations," and its ten sections contain provisions, some applicable to private and others to both

private and municipal corporations. Section five declares that "corporations may sue and be sued in all courts in like manner as individuals." And that this section is not to be limited to private corporations is evident not alone from the generality of its language and from the title of the article, but also from several sections therein in which municipal corporations are expressly named. Thus the second section subjects the property of corporations to taxation with a proviso "that the property of corporations formed for municipal . . . purposes may be exempted by law." And section ten expressly recognizes the county as a municipal corporation, for its language is "no county, city, town or other municipal corporation shall become a stockholder," etc. Thus the liability of counties as municipal corporations to suit is declared by the constitution itself. Further the act under which these bonds were issued provided for suits against the county in respect to this indebtedness in one of the courts of the State; and this liability of a county to suit has been affirmed by the Supreme Court of Nevada in the following cases: *Waitz* v. *Ormsby Co.*, 1 Nevada, 370: *Clarke* v. *Lyon County*, 8 Nevada, 181; *Floral Springs Water Co.* v. *Rives*, 14 Nevada, 431.

With regard to the other objection the case of *Cowles* v. *Mercer County*, 7 Wall. 118, 122, is decisive. In that case the court, by the Chief Justice, expressed its opinion on the very question in these words: "But it was argued that counties in Illinois, by the law of their organization, were exempted from suit elsewhere than in the Circuit courts of the county. And this seems to be the construction given to the statutes concerning counties by the Supreme Court of Illinois. But that court has never decided that a county in Illinois is exempted from liability to suit in national courts. It is unnecessary, therefore, to consider what would be the effect of such a decision. It is enough for this case that we find the board of supervisors to be a corporation authorized to contract for the county. The power to contract with citizens of other States implies liability to suit by citizens of other States, and no statute limitation of suability can defeat a jurisdiction given by the Constitution."

. With regard to the objection that the statute under which these bonds were issued contravenes the state constitution, it is enough to refer to the case of *Odd Fellows' Bank* v. *Quillen*, 11 Nevada, 109, in which the Supreme Court of the State held the act valid; following in that decision the case of *Youngs* v. *Hall*, 9 Nevada, 212.

It is further objected that the complaint was defective in not showing that the bonds and coupons had been presented to the county commissioners and county auditor for allowance and approval, as provided by sections 1950 and 1964-5-6 of the General Statutes of the State. Those sections, referring to claims and accounts, have application only to unliquidated claims and accounts, and do not apply to bonds and coupons. This question was presented in the case of *County of Greene* v. *Daniel*, 102 U. S. 187, 194, in which the court observed, speaking of bonds and coupons, that "the claim was, to all intents and purposes, audited by the court when the bonds were issued. The validity and amount of the liability were then definitely fixed, and warrants on the treasury given, payable at a future day."

The remaining question arises on the statute of limitations. By the general limitation law of the State, some of the coupons were barred; but there has been this special legislation in reference to these coupons. The bonds were issued under the funding act of 1873. In 1877 the county was delinquent in its interest, and the legislature passed an act amendatory to the act of 1873. This amendatory act provided for the registering of overdue coupons, and imposed upon the treasurer the duty of thereafter paying the coupons as money came into his possession applicable thereto, in the order of their registration. Statutes of Nevada, 1877, 46.

The coupons, which by the general limitation law would have been barred, were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted. Thereupon the treasurer registered them as presented, in accordance with the act of 1877, and from the time of their registration to the commencement of this suit there was no money in the treasury appli-

cable to their payment. This act, providing for registration and for payment in a particular order, was a new provision for the payment of these bonds, which was accepted by the creditor, and created a new right upon which he might rely. It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait. It amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as money came into the interest fund; and such promise was by the creditor accepted; and when payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided.

The cases of *Underhill* v. *Sonora*, 17 California, 173, and *Freehill* v. *Chamberlain*, 65 California, 603, are in point. In the former case, the court observes that "the legislative acts then recognized the debt and made provision for its payment. This is enough to withdraw the case from the operation of the statute; it is equivalent to a trust deed by the State setting apart property out of which the money due was to be paid at a given time, if not sooner paid upon a claim acknowledged to be an outstanding debt; and we cannot conceive of any principle of law or justice which would hold the claim to be barred by the statute simply because the creditor waited after this for his money." In the other case it was held that "where a statute provides for the issuing of bonds of a city with interest coupons payable as fast as money should come into the treasury from special sources designated by the act, the statute of limitations does not commence to run against the coupons until the money is received in the treasury in accordance with the terms of the act."

Both of these decisions were rendered before the act of 1877 was passed, and, being in an adjoining State which has always had close relations with the State of Nevada, may well have induced the passage of that act.

These are all the questions presented. We see no error in the rulings in the Circuit Court, and its judgment is therefore

*Affirmed.*

LINCOLN COUNTY *v.* SUTRO, No. 1275. LINCOLN COUNTY *v.* VIN-CENT, No. 1276. Error to the Circuit Court of the United States for the District of Nevada. These cases are similar, and the same judgment will therefore be entered in them.

*Mr. H. F. Bartine* for plaintiffs in error.

*Mr. Abraham Clark Freeman* for defendants in error.